# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, ex rel. Thomas C. Horne, Attorney General,<br><br>Plaintiff,<br><br>vs.<br><br>The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC,<br><br>Defendants. | 2:13-cv-00463 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motions at docs. 4 & 15] |

## I.  MOTIONS PRESENTED

At docket 4 defendants The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC ("S&P") (collectively "Defendants") move to stay proceedings in this case pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML") on a motion pending before the JPML to transfer the case at bar and numerous others for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407. Complicating resolution of the motion to stay is a motion to remand filed at docket 15 by plaintiff State of Arizona, ex rel Thomas C. Horne, Attorney General ("Plaintiff"). Plaintiff's opposition to the motion to stay is at docket 16 and Defendants' reply is at docket 17.  Defendants' response to the motion to remand is at docket 19 and Plaintiff's

reply is at docket 22.  In addition, the United States filed a notice at docket 18 asking the court to take into account its interests pursuant to 28 U.S.C. § 517.  Defendants responded to the United States at docket 21.  Oral argument was requested by Defendants.  However, the court finds the parties' papers to be adequate and concludes that oral argument would not be of assistance to the court.

## II.  BACKGROUND

The parties are familiar with the facts and circumstances giving rise to the pending lawsuit and to similar lawsuits in other jurisdictions.  The court finds it unnecessary to set out more than a brief summary here.   Plaintiff filed this lawsuit in Maricopa County Superior Court on February 5, 2013.   The gravamen of Plaintiff's claim is captured in the first paragraph of the complaint:

> This lawsuit seeks redress for [Defendants'] unlawful business practices of systematically and intentionally misrepresenting that its analysis of structured finance securities was objective, independent and not influenced by either S&P's or its clients' financial interests.  These representations were untrue and S&P knew they were untrue.[1]

Alleging that Defendants violated the Arizona Consumer Fraud Act, A.R.S. 1521, *et seq.,* Plaintiff asks the court for an award of restitution, imposition of civil penalties, an award of fees and costs, and equitable relief to prevent Defendants from engaging in such practices in the future.[2]  Plaintiff does not advance any claim which it identifies as arising under federal law.  In most situations, claims under the Arizona statute could not be heard in federal court on the basis of federal question jurisdiction.

---

[1]Complaint, doc. 1-1, ¶1.

[2]*Id.,* ¶ 12.

2

On the other hand, it is clear from the complaint that the conduct forming the basis for the lawsuit was not limited to Arizona: "S&P represents to investors, government regulators and other consumers, including those in Arizona, that its analysis of structured financial securities is independent, objective and free from outside influence."[3]  Moreover, the complaint frequently alludes to Defendants' role in the national and international financial marketplace, and points to alleged problems such as "rating shopping" and an underlying drive for enhanced revenues which clearly apply to a much wider market than Arizona.  It is also true that very similar lawsuits have been filed by several Attorneys General in locations seeking recovery based on their own consumer fraud laws.  This court is aware of such lawsuits in the following jurisdictions: Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Illinois, Iowa, Maine, Mississippi, Missouri, North Carolina, Pennsylvania, South Carolina, South Carolina, Tennessee, and Washington.

Defendants removed the case to this court on federal question grounds.   In the removal petition, Defendants contend that Plaintiffs' claims "necessarily raise" an issue of federal law which is substantial and disputed.  They go on to assert:

> In particular . . .  The claims that Plaintiff seeks to assert together with a
> wave of parallel cases, (i) threaten to disrupt and supplant a complex and
> exclusive federal regulatory scheme enacted by Congress and (ii) require
> the evaluation and adjudication of the scope and nature of that scheme in
> order to determine whether relief sought by the State is available to it and
> consistent with the United States Constitution.[4]

Defendants note that S&P is a rating organization registered with the Securities and

---

[3]*Id.,* ¶ 63.

[4]Notice of Removal, doc. 1 at 2.

Exchange Commission and allege its ratings and those of other registered entities

constitute "integral components of the broader federal financial regulatory scheme."[5]

### III.  DISCUSSION

At first blush it might seem that because the complaint pleads only a state law

claim there could be no federal question jurisdiction.  However, the Supreme Court has

recently re-iterated in *Gunn v. Minton*[6] that there is a small class of cases in which state

law claims support the exercise of federal question jurisdiction.  The Court wrote:

> [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1)
> necessarily raised, (2) actually disputed, (3) substantial, and (4) capable
> of resolution in federal court without disrupting the federal-state balance
> approved by Congress.[7]

Confronted with a motion to stay consideration of a motion to remand while

awaiting a JPML ruling on a request to transfer, district courts have applied a three part

test articulated in *Conroy v. Fresh Del Monte Produce Inc.*[8]   The first part of the test

requires the court to have a preliminary look at the merits of the remand motion.

Second, the court should consider whether the question of jurisdiction is difficult

factually or legally.  Finally, the court should consider whether the jurisdictional issue is

identical or very similar to the jurisdictional issue raised in other cases which have been

or appear likely to be transferred for handling pursuant to JPML procedures.

The court has considered the parties' briefing as well as the Notice by the United

---

[5]*Id*. at 3-4.

[6]___ U.S. ___, 133 S. Ct. 1059 (2013).

[7]133 S. Ct. at 1065.

[8]325 F.Supp.2d 1049 (N.D. Cal. 2004).

4

States and Defendants' response to the Notice.  Having done so, the court finds the briefing amply demonstrates that determining whether the requirements for federal jurisdiction articulated in *Gunn* are met in the case at bar would be factually complex and involve difficult questions of law.   Finally, the court finds that the case at bar is very similar to several others in which the trial court entered a stay.  The cases include two others within the Ninth Circuit, *Washington v. The McGraw-Hill Companies, Inc., et al.,*[9] and *Idaho v. The McGraw-Hill Companies, et al.*[10]  There are several other district court decisions which reached the same conclusion cited and briefly discussed in the Washington and Idaho cases.

### V.  ORDER FOR STAY AND ORDER TO CEASE TRACKING DOCKET 15

For the reasons above, the motion to stay at docket 4 is **GRANTED.**  This matter is **STAYED** until twenty-one (21) days after the JPML rules on the request to transfer the case.  The Clerk of Court will please cease tracking the motion to remand at docket 15. If the JPML does not order transfer of this case, then upon the filing of a Notice by Plaintiff, the Clerk will then please resume tracking the motion at docket 15 for decision by this court.

DATED this 3rd day of June 2013.

_____
/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[9]Case No. C13-0398-JCC (W.D. Wash. 2013).

[10]Case No. 1:13-cv-108-BLW (D. Id. 2013).